**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOURCEONE DENTAL, INC., | |
| Plaintiff, | |
| v. | Civil Action No.15-cv-05440-BMC-GRB |
| PATTERSON COMPANIES, INC, HENRY SCHEIN, INC., and BENCO DENTAL SUPPLY COMPANY, | **FILED UNDER SEAL** |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
SOURCEONE DENTAL, INC.'S MOTION FOR SUMMARY JUDGMENT
<u>AS TO DEFENDANTS' COUNTERCLAIMS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ....................................................................... 4

SUMMARY JUDGMENT STANDARD ........................................................................... 9

ARGUMENT ...................................................................................................................... 10

I.    FALSE ADVERTISING ......................................................................................... 10

    A. SourceOne's Savings Claims Are True or At Most Ambiguous, And
    Therefore Cannot Be Literally False ............................................................... 12

        1.  The Undisputed Facts Show SourceOne's "Save More Than" or "Save
        Over" Statements Are True ..................................................................... 13

        2.  SourceOne's "Average" Savings Claims Are Ambiguous, Which Means
        They Cannot Be Literally False ............................................................... 14

        3.  SourceOne's "Leverage" Claims Are Literally True ............................. 16

    B. Defendants Have No Evidence the Challenged Claims Are Material ........................ 17

        1.  Defendants Cannot Show the Allegedly False Savings Claims Were
        Material to Dentists' Purchasing Decisions .......................................... 18

        2.  There Is No Evidence SourceOne's Allegedly False Statements About Its
        Employees Are Material ........................................................................... 20

    C. Defendants Cannot Show an Entitlement to Injunctive Relief ................................... 21

II.   COMMON LAW UNFAIR COMPETITION ................................................................ 23

III.  TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS
     RELATIONSHIPS .......................................................................................................... 24

CONCLUSION .................................................................................................................... 28

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Cuomo*,
   100 F.3d 253 (2d Cir. 1996) ................................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 10

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016) ............................................................................... 18, 19

*Armijo v. Mazda Int'l.*,
   No. 14-03-00365-CV, 2004 WL 1175335 (Tex. App. May 24, 2004) ..................... 25

*Aviation Dev. Co. v. C&S Acquisition Corp.*,
   No. 97-CIV. 9302 (AJP), 1999 WL 123718 (S.D.N.Y. Mar. 8, 1999) .................... 12

*Bradford v. Vent*,
   48 S.W.3d 749 (Tex. 2001) .............................................................................. 26, 27

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................. 9

*COC Servs., Ltd. v. CompUSA, Inc.*,
   150 S.W.3d 654 (Tex. App. 2004) ........................................................................ 25

*Coca–Cola Co. v. Tropicana Prods., Inc.*,
   690 F.2d 312 (2d Cir. 1982) ................................................................................. 20

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
   417 S.W.3d 909 (Tex. 2013) ................................................................................. 24

*Cumberland Packing Corp. v. Monsanto Co.*,
   32 F. Supp. 2d 561 (E.D.N.Y. 1999) .................................................................... 11

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
   907 S.W.2d 472 (Tex. 1995) ................................................................................. 27

*Eberle v. Town of Southampton*,
   305 F.R.D. 32 (E.D.N.Y. 2015) ............................................................................ 11

*eMove Inc. v. SMD Software Inc.*,
   No. CV-10-02052-PHX-JRG, 2012 WL 1379063 (D. Ariz. Apr. 20, 2012) ........... 23

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002) ................................................................... 10

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
    774 F.3d 192 (3d Cir. 2014) ................................................................. 13

*Hayut v. State Univ. of N.Y.*,
    352 F.3d 733 (2d Cir. 2003) ................................................................... 9

*Jeffreys v. City of N.Y.*
    426 F.3d 549 (2d Cir. 2005) ................................................................. 10

*Johnson & Johnson v. Carter–Wallace, Inc.*,
    631 F.2d 186 (2d Cir. 1980) ................................................................. 21

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
    348 F. Supp. 2d 165 (S.D.N.Y. 2004) .................................................. 12

*Katt v. City of New York*,
    151 F. Supp. 2d 313 (S.D.N.Y. 2001) .................................................. 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................. 10

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
    848 F.2d 34 (2d Cir.1988) .................................................................... 23

*Merck Eprova AG v. Gnosis S.p.A.*,
    760 F.3d 247 (2d Cir. 2014) ........................................................... 22, 23

*Milam v. Nat'l Crime Bureau*,
    989 S.W.2d 126, 132 (Tex. App. 1999) ............................................... 25

*Morgan Stanley & Co., Inc. v. Texas Oil Co.*,
    958 S.W.2d 178 (Tex. 1997) ................................................................ 26

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) ................................................................. 18

*Richardson-Eagle, Inc. v. William M. Mercer, Inc.*,
    213 S.W.3d 469 (Tex. App. 2006) ....................................................... 25

*Rimkus Consulting Group, Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ................................................. 27

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001) ........................................................................ 11

*Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp.*,
   No. CIV. 09-642-SLR, 2011 WL 2312569 (D. Del. June 8, 2011) ........................................ 21

*Skydive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ........................................................................ 19

*Solinsky v. Arthritis Found*,
   635 F. Supp. 620 (E.D.N.Y. 1986) ................................................................... 11

*SP Midtown, Ltd v. Urban Storage*,
   No. 14-07-00717-CV, 2008 WL 1991747 (Tex. App. May 8, 2008) ..................................... 25

*Stephan v. Baylor Med. Ctr. at Garland*,
   20 S.W.3d 880 (Tex. App. 2000) ..................................................................... 25

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
   646 F. Supp. 2d 510 (S.D.N.Y. 2009) ........................................................... 15, 17

*Texas Oil Co. v. Tenneco Inc.*,
   917 S.W.2d 826 (Tex. App. 1994) ................................................................... 26

*Time Warner Cable, Inc. v.DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir.2007) ................................................................... *passim*

## Statutes & Rules

15 U.S.C. § 1125(a)(1) ................................................................... 10

Fed. R. Civ. P. 16 ........................................................................ 11

Fed. R. Civ. P. 56 ........................................................................ 9

Plaintiff SourceOne Dental, Inc. ("SourceOne") submits this memorandum of law in support of its motion for summary judgment on the counterclaims brought against it Defendants Patterson Dental Companies, Inc. ("Patterson) and Benco Dental Supply Company ("Benco") (collectively "Defendants").

## PRELIMINARY STATEMENT

SourceOne is an online marketplace for the sale of dental supplies and equipment to dentists that has been endorsed by some of the largest state dental associations in the United States, including the dental associations of Texas, Florida, Georgia, Arizona and Nevada. SourceOne offers dentists the opportunity to purchase a wide range of dental supplies and equipment commonly sold by manufacturers directly to dentists (so-called "manufacturer-direct" products), as well as dental supplies and equipment commonly sold to dentists through manufacturer-authorized distributors, such as Defendants (so-called "dealer-brand" products). Many of the manufacturer-direct products that are functionally interchangeable with comparable dealer-brand products are much less expensive than those dealer-brand products.   Before entering the relevant market, SourceOne commissioned a study that showed (at statistically-significant levels of confidence) that dentists would, if given the chance to purchase many manufacturer-direct products in a single transaction, substitute manufacturer-direct products for the dealer-brand products they had been purchasing, thereby saving substantial sums. Defendants do not dispute any of this.

In September 2015, SourceOne filed the instant lawsuit alleging that Patterson, Benco and now-settled Defendant Henry Schein, Inc., conspired to eliminate SourceOne as a competitor.   In its Complaint, SourceOne alleged that when SourceOne's business model evolved to encompass the endorsement of SourceOne by state dental associations ("SDAs"),

1

SourceOne became a dangerous competitive threat to Defendants.  Specifically, when the Texas Dental Association ("TDA") endorsed SourceOne in 2013, Defendants took swift action in furtherance of their *per se* illegal conspiracy through boycotts of the trade show of the TDA, as well as of manufacturers and dentists that did business with SourceOne.  Defendants then took the same action in Arizona when the Arizona Dental Association ("AZDA") endorsed SourceOne.  Benco and Schein have both entered into consent judgments with the Texas Attorney General to settle allegations related to SourceOne's claims.

In answering SourceOne's complaint, Patterson asserted Lanham Act and common law unfair competition counterclaims based on false advertising, as well as a claim for tortious interference with prospective business relationships.  ECF No. 33.  Almost a year later, long after the deadline for the parties to amend their pleadings had passed, Benco sought leave to amend its answer to file counterclaims mirroring those of Patterson, which the Court granted.  ECF No. 91; Nov. 7, 2016 Minute Entry; ECF No. 94.

Defendants' counterclaims are baseless, and little more than an attempt to distract the jury and this Court from their illegal conspiracy, the evidence of which is overwhelming. Indeed, discovery into SourceOne's claims has revealed direct, unambiguous evidence of an agreement between Patterson and Benco, as SourceOne alleged.[1]  In light of this evidence, it is not surprising that Defendants responded by trying to disparage SourceOne and muddy the issues for trial with their Counterclaims.[2]  However, the Court should not countenance that strategy and should now dispose of Defendants' Counterclaims claims at summary judgment.

---

[1] ECF Nos. 140 & 140-1 through 140-8 (Exs. A-H); Ex. 42, Sept. 11, 2017 Hr'g Tr. at 2-3.

[2] Benco's strategy of bringing baseless and retaliatory claims against SourceOne is not limited to the Counterclaims.   Benco recently instituted proceedings in a Pennsylvania state court against SourceOne and SourceOne's litigation funder in this case on a specious claim of champerty.

While Defendants' Counterclaims alleged a myriad of supposedly false statements by SourceOne, Defendants have now abandoned most of them, and now "expect to assert at trial" only that SourceOne "made literally false claims to state dental associations and dentists about: (i) the price savings dentists would receive and (ii) SourceOne's employees' existence and qualifications."   ECF No. 151, Proposed Joint Pre-Trial Order at 7 ("Proposed JPTO"). Specifically, Defendants contend SourceOne overstated its savings claims of "an average of more than 35% on dental supplies" because their expert has calculated the actual "average" savings available to dentists purchasing through SourceOne as compared to purchasing from Defendants were only between 19 and 22 percent.  *Id.*

Defendants' false advertising claims fail because the undisputed facts show SourceOne's "price savings" claims are literally true or at most ambiguous.  There is no dispute that at all relevant times dentists can, could, and did achieve the stated savings of 35 percent or more. Many dentists did so—as evidenced by both the price comparisons on which the savings claims were based, and dentist testimonials.  The savings claims are therefore literally true.  Defendants offer their own interpretation of the advertisements to mean *all* dentists "would" achieve an average savings of 35 percent or more.  But that is not what the advertisements say, and there is no evidence any dentist ever interpreted these claims in this way—just Defendants' attorney argument and *ipse dixit*.   Summary judgment is appropriate because Defendants have no evidence that any dentist ever interpreted SourceOne's savings claims (which are literally true) in the strained way that Defendants do.  Even if that were a reasonable interpretation, it is not the *only* reasonable interpretation, especially since the advertisements expressly state the savings are merely "projected."  At a minimum, SourceOne's savings claims are "susceptible to more than

---

These claims are an end-round around the Scheduling Order in this case, and a transparent attempt to force SourceOne to settle with Benco on terms that Benco finds acceptable.

one reasonable interpretation," which means they are ambiguous and "cannot be literally false." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir.2007).

Moreover, even if Defendants could prove the literal falsity of the statements they challenge, there is no evidence any of the statements were "material"—that is, likely to influence the purchasing decision of any dentist. Defendants took no discovery on this element of their claims, and summary judgment is appropriate. Finally, neither Patterson nor Benco are entitled to the injunctive relief they seek. As reflected by their abandonment of any claim of actual injury—each Defendant seeks only nominal damages (in Patterson's case in the amount of $1)— Patterson and Benco cannot support any claim of irreparable harm, as any claim of injury to goodwill or reputation would be "speculative" and based on nothing more than their "mere subjective belief," which does not suffice. *Time Warner*, 497 F.3d at 161.

For the reasons described below, SourceOne respectfully requests the Court grant SourceOne's motion for summary judgment on Defendants' Counterclaims so the parties can proceed expeditiously to trial on SourceOne's antitrust claims.

## STATEMENT OF UNDISPUTED FACTS

The facts relevant to SourceOne's motion are set forth in SourceOne's accompanying Local Rule 56.1 Statement of Undisputed Facts ("SSOF"), and are summarized here:

SourceOne operates internet websites that offer for sale dental supplies and equipment. ECF No. 38, SourceOne Answer to Patterson Counterclaims ¶ 2. When SourceOne launched its initial website, SourceOneDental.com, in 2012, it was online marketplace that offered dentists the opportunity to purchase a wide-range of so-called manufacturer-direct products. SSOF ¶ 8

(Ex. 1, at SourceOne-0012310).[3]  Many of the manufacturer-direct products that are functionally interchangeable with comparable dealer-brand products are less expensive than those dealer-brand products.  SSOF ¶ 9 (Ex. 1, at SourceOne-0012310; Ex. 4, at  SourceOne-0062144; Ex. 5, at TDA_001340.

In 2013, SourceOne added dealer-brand products to its website at prices ten percent or more below those of Defendants, in addition to the wide range of even less expensive manufacturer-direct brands that Defendants do not carry.  SSOF ¶ 10 (Ex. 3, Shams Dep. at 15:11-21, 28:7-31:2, 86:15-22; Ex. 6, SourceOne 30(b)(6) (Shams) Dep. at 10:17-15:22, 28:11-29:11, 30:2-21; Ex. 5, at TDA_00129, TDA_001340; Ex. 1, at SourceOne-0012304).

Before entering the relevant market, SourceOne commissioned a survey to study the current buying habits, preferences and needs of dental practices (the "DPR Survey").  SSOF ¶ 4 (Ex. 1, at SourceOne-0012304; Ex. 2, at TDA_001296-1302).  The DPR Survey showed (at statistically-significant levels of confidence) that dentists would, if given the chance to purchase many manufacturer-direct products in a single transaction, substitute manufacturer-direct products for the dealer-brand products they had been purchasing, thereby saving substantial sums.  SSOF ¶¶ 6-7 (Ex. 1, at SourceOne-0012305, SourceOne-0012312-13, Ex. 2, at TDA_001296 - 1302; Ex. 3, Shams Dep. at 31:6-12, 32:1-20).  Defendants do not dispute the accuracy of the DPR Survey.

SourceOne regularly conducts pricing analyses at the request of current and potential customers.  These analyses compare the prices of products, by SKU, on purchase invoices submitted by a current or potential customer with the prices of those same or similar products (if

---

[3] Numbers prefixed by "Ex." refer to exhibits attached to the Declaration of Michael S. Mitchell, Esq., in support of SourceOne's Motion for Summary Judgment as to Defendants' Counterclaims ("Mitchell Decl.").

available), by SKU, that are sold or offered for sale by Direct Manufacturers and Dealers on SourceOne's website(s) ("Price Comparisons").  SSOF ¶ 12 (Ex. 3, Shams Dep. at 126:23-128:8); Exs. 7-16 (Price Comparison examples).  The Price Comparisons compare the prices offered by SourceOne to the prices offered by the Defendants and other distributors for the same or similar products.  SSOF ¶¶ 12-13 (Ex. 3, Shams Dep. at 126:23-128:8); Exs. 7-16). SourceOne prepares the Price Comparisons for potential customers to illustrate the magnitude of the savings available by purchasing through SourceOne, rather than from Defendants and other distributors.  *Id.*  Defendants do not dispute the accuracy of these Price Comparisons.

From time to time, SourceOne has analyzed sample sets of Price Comparisons to determine potential customers' projected price savings.  SSOF ¶ 14 (Ex. 3, Shams Dep. at 126:23-128:8).  These analyses have shown savings of 35 percent or more on supply expenditures, as compared to purchases of the same or similar products from other sellers of dental supplies, including but not limited to Patterson and Benco.  SSOF ¶ 14 (ECF No. 146-6, Kenyon Supp. Report at 5 (asserting that more than 10 percent of the SourceOne Price Comparisons Defendants' expert determined to be "final" showed "35% or greater savings"); Exs. 7-16 (Price Comparison examples)).  Defendants do not dispute the accuracy of these Price Comparisons.

In seeking TDA's endorsement in 2013, SourceOne submitted documents to the TDA describing its business and its proposal to become a TDA endorsed partner for the purpose of offering for sale dental products to TDA members.  These documents included SourceOne's TDA Perks Partner Application and later a presentation.  SSOF ¶ 15  (Ex. 5, Dep. Ex. 13, TDA_001339 – 47 ("SourceOne's TDA Perks Endorsed Partner Application"); Ex. 2, Dep. Ex. 64, TDA_001291 – 1319 ("SourceOne's TDA Presentation").  SourceOne's TDA Presentation

6

included statements regarding the projected savings TDA-member dentists could achieve by purchasing dental supplies through SourceOne.   SSOF ¶ 16 (Ex. 2, at TDA_001307). SourceOne's TDA Perks Partner Application included statements about SourceOne's employees. SSOF ¶ 18 (Ex. 5, at TDA_001341).

The TDA endorsed SourceOne in September 2013.  SSOF ¶ 19  (Ex. 19, Dep. Ex. 3, Endorsement Agreement Between TDA Member Benefits Ltd. and SourceOne Dental, Inc., TDA_000036 – 48).  In October 2013, SourceOne launched TDA Perks Supplies, an online sales platform owned and operated by SourceOne, and endorsed and promoted by the TDA, for TDA members to purchase dental products.  ECF No. 96, SourceOne Answer to Benco Counterclaims ¶ 7.  As a condition of gaining access to TDA member customers via TDA Perks Supplies, SourceOne's vendors were required to discount their prices below SourceOne's public prices, which they did based on expected increased sales from TDA members resulting from TDA's endorsement.  SSOF ¶ 20 (Ex. 3, Shams Dep. at 58:12- 62:17, 324:5-326:25; Ex. 18, Osio Dep. at  624:25-628:12;  Ex.  20,  Dep.  Ex.  129,  SourceOne-0033898 - 99;  Ex.  21,  Dep.  Ex.  194, SourceOne-0038011 - 12; Ex. 22, Kunin Dep. at 150:20-152:25, 156:4-157:14; ECF No. 94, Benco Counterclaims at p. 23 n.2; *see also* ECF No. 146, Defs' Pre-Mot. Ltr. at 2).

Following the TDA's endorsement of SourceOne, the TDA, with SourceOne's input or approval, sent e-mails or otherwise distributed to TDA member dentists, advertisements or other promotional materials regarding TDA Perks Supplies that included the following statements:

- "On October 1, 2013, TDA Perks launched a new program that leverages the group buying power of more than 7,400 TDA members, who collectively have an annual dental supplies spend of more than $370 million.  TDAPerksSupplies.com enables members to save an average of more than 35 percent on dental supplies." SSOF ¶ 22  (Ex. 23, Dep. Ex. 887, at PattersonDental 00000923);

- "SAVE more than 35% on DENTAL SUPPLIES . . . TDAPerksSupplies.com leverages the group buying power of more than 7,400 members. . . . Perks

Supplies is projected to save TDA members an average of more than 35% on dental supplies." SSOF ¶ 22 (Ex. 24, Dep. Ex. 63);

- "You've probably heard of TDA Perks Supplies by now, and that it's projected to save TDA members more than 35% on dental supplies." SSOF ¶ 22 (Ex. 25, Dep. Ex. 11); and

- "By leveraging the group buying power of more than 7,400 TDA members, a new TDA Perks program is projected to save TDA members an average of more than 35% on dental supplies." SSOF ¶ 22 (Ex. 26, Dep. Ex. 5).

In 2014, the Arizona Dental Association endorsed SourceOne to create an online sales platform called AZDA Perks Supplies, owned and operated by SourceOne and endorsed and promoted by the AZDA, for AZDA members to purchase dental products. SSOF ¶ 23 (Ex. 27, Dep. Ex. 76, AZDA Services Endorsed Company Agreement). Following the AZDA's endorsement of SourceOne, the AZDA, with SourceOne's input or approval, sent e-mails or otherwise distributed to AZDA members, advertisements or other promotional materials regarding AZDA Perks Supplies that included "savings" statements similar to those in the TDA's materials. SSOF ¶ 24 (Ex. 28, Dep. Ex. 12, SourceOne-0018652) ("Leverage the buying power of over 2,300 AzDA members and save over 32% on dental supplies.").

The savings claims stated in the documents SourceOne provided to the TDA and AZDA, and later in advertisements or other materials disseminated by the SDAs, were based on a sample of Price Comparisons. SSOF ¶ 25 (Ex. 3, Shams Dep. at 126:23-130:23, 133:18-137:10). Although SourceOne's CEO Ahmed Shams does not recall which Price Comparisons he used to estimate the average savings stated in the documents SourceOne provided to the TDA and AZDA, he calculated the average savings using Price Comparisons that he believed provided a "fair representation" of the projected savings customers could achieve by purchasing through SourceOne. SSOF ¶ 26 (Ex. 3, Shams Dep. at 130:4-131:3). The "projected" savings reflected in materials provided by SourceOne to the TDA and AZDA were also adjusted upward to reflect

the additional discount that SourceOne's vendors agreed to provide for TDA and AZDA member customers below SourceOne's public prices.  SSOF ¶ 27 (Ex. 3, Shams Dep. at 135:22-137:7).

Before the TDA and AZDA disseminated the advertisements at issue, they reviewed Price Comparisons provided by SourceOne to verify the accuracy of the savings claims to their satisfaction.  SSOF ¶ 28  (Ex. 18, Osio (TDA) Dep. at 262:9-20, 605:11-607:8; Ex. 29, Xelowski (AzDA) Dep. at 50:14-51:7, 238:1-239:3).  They also obtained testimonials from SourceOne customers stating that they realized savings, including average savings, of 30 percent or more purchasing dental supplies through SourceOne.  SSOF ¶ 29 (Exs. 30-32).

The advertisements or materials disseminated by the TDA and AzDA to their members did not identify how the savings claims were calculated; reference the use of Price Comparisons to calculate the "projected" savings; identify the products used to calculate the savings (i.e., whether the savings were based on the substitution of more expensive dealer-brand brand products with lower-priced manufacturer-direct brand products); or make any express reference to Patterson, Benco, or any other dealer distributor.  SSOF ¶ 22  (Exs. 23-26).

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted if the pleadings, admissible discovery materials and declarations setting forth statements that would themselves be admissible at trial demonstrate that there is no genuine issue of fact necessitating trial.  Fed. R. Civ. P. 56(c).  The standard on a motion for summary judgment is well established:

> Rule 56(c) of the Federal Rules of Civil Procedure unequivocally mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, "[a] defendant moving for summary judgment must

prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996).

After the moving party has shown that there is no genuine issue as to any material fact, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).  In doing so, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (citation and internal quotation marks omitted), but must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## ARGUMENT

### I.    FALSE ADVERTISING

Each Defendant asserts a false advertising claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  ECF No. 33, Answer and Counterclaim of Patterson Companies, Inc. at p. 20 (¶¶ 39-43) ("Patterson Counterclaims"); ECF No. 94, Amended Answer, Additional Defenses, and Counterclaims of Defendant Benco Dental Supply Company at pp. 29-30 (¶¶ 66-70) ("Benco Counterclaims").

To establish a false advertising claim under Section 43(a) of the Lanham Act, a plaintiff must first identify a statement constituting "commercial advertising or promotion."  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002).  If the plaintiff identifies an actionable statement constituting "commercial advertising or promotion," the plaintiff must then prove the following elements: (1) the defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the

10

capacity to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001). The plaintiff has the burden of proof as to all elements of the claim. *Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 582-83 (E.D.N.Y. 1999).

While Defendants alleged in their Counterclaims a litany of supposedly false statements by SourceOne, Defendants have abandoned nearly all of these claims, and stated in the Proposed Joint Pre-Trial Order that the Lanham Act claims Defendants intend to "assert at trial" are now based only on SourceOne's supposedly "literally false claims to state dental associations and dentists about: (i) the price savings dentists would receive and (ii) SourceOne's employees' existence and qualifications." ECF No. 151, Proposed JPTO at 7; *see also* ECF No. 131, Defs' Pre-Mot. Ltr. at 2; Patterson Counterclaims at pp. 16-18 (¶¶ 20-28); Benco Counterclaims at pp. 22-24 (¶¶ 22-35). Thus, to the extent Defendants had originally pleaded Lanham Act claims based on other allegedly false statements, but which Defendants did not identify in the Proposed Joint Pre-Trial Order as the basis for the Lanham Act claims they "expect to assert at trial," those claims have been abandoned, and summary judgment for SourceOne is appropriate. *See* Fed. R. Civ. P. 16.[4]

---

[4] *See also Eberle v. Town of Southampton*, 305 F.R.D. 32, 35 (E.D.N.Y. 2015) ("[t]hat which is not alleged in the Pre-Trial Order is generally deemed waived"); *Solinsky v. Arthritis Found.*, 635 F. Supp. 620, 622 (E.D.N.Y. 1986) (finding claims alleged in complaint but not included in pre-trial order to have been abandoned); *Katt v. City of New York*, 151 F. Supp. 2d 313, 346 (S.D.N.Y. 2001) ("[i]t is an established procedural principle that a party's failure to include a legal theory or defense in the pre-trial order results in its subsequent abandonment or waiver.");

Based on the undisputed evidence, Defendants cannot show SourceOne's savings claims were "literally false" because those statements are either literally true or ambiguous.  Nor can Defendants prove that either category of allegedly false statements—the savings claims and statements about SourceOne's "employees' existence and qualifications"—are "material." Finally, Defendants cannot show any likelihood of irreparable harm warranting the injunctive relief they seek.  For these reasons, SourceOne is entitled to summary judgment on Defendants' Lanham Act counterclaims.[5]

### A.  SourceOne's Savings Claims Are True or At Most Ambiguous, And Therefore Cannot Be Literally False

The first element of a Lanham Act false advertising claim requires proof of a false or misleading statement.  Defendants' claims are based on "literal falsity."  ECF No. 131, Defs' Pre-Mot. Ltr. at 1; ECF No. 151, Proposed JPTO at 7.[6]  To succeed under a "literal falsity" theory, a plaintiff must show that the challenged advertisement is "false on its face" or "explicitly false." *Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp*., 348 F. Supp. 2d 165, 178 (S.D.N.Y. 2004).  The message must be unambiguous. *Time Warner*, 497 F.3d at 158. "[I]f the language . . . is susceptible to more than one reasonable interpretation, the advertisement

---

*Aviation Dev. Co. v. C&S Acquisition Corp.*, No. 97-CIV. 9302 (AJP), 1999 WL 123718, at *5 (S.D.N.Y. Mar. 8, 1999) ("The Pretrial Order limits the evidence that may be presented at trial").

[5] SourceOne reserves the right to assert at trial, if necessary, that Patterson and Benco cannot satisfy any and all elements of their false advertising counterclaims against SourceOne.  For example, SourceOne does not concede that all of the challenged statements constitute "commercial advertising or promotion," or that SourceOne's challenged statements about its "employees' existence and qualifications" are literally false.

[6] Defendants cannot claim SourceOne's savings claims were misleading (that is "though literally true . . .  likely to mislead and confuse consumers") because such claims of "implied" falsity require the plaintiff to provide consumer data or other extrinsic evidence of consumer deception to show that the audience to which the advertisement is directed is in fact misled by the advertisement. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Defendants have no such proof, and instead seek to benefit from a presumption of a consumer deception that courts permit from a finding of "literal falsity." *Id.*

cannot be literally false." *Id.*; *see also Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) ("Unless the claim is unambiguous . . . it cannot be literally false.").

SourceOne's "savings" claims challenged by Defendants fall into three categories: (1) statements of savings exceeding a certain percentage (*i.e.*, "more than 35%" or "over 30%"); (2) statements of "average" savings of 30 percent or more; and (3) statements that SourceOne "leveraged the group buying power" of SDA members to achieve the stated savings, which Defendants' characterize as the "basis" for the savings claims. *See* ECF No. 151, Proposed JPTO at 7; ECF No. 131, Defs' Pre-Mot. Ltr. at 2; Patterson Counterclaims at pp. 14-18 (¶¶ 9-10, 12-15, 20-21, 26-28); Benco Counterclaims at pp. 20 (¶¶ 10-15, 22, 30-35). As to each category, Defendants' claims of literal falsity fail because the challenged savings claims are either literally true or (at most) ambiguous, warranting summary judgment for SourceOne.

### 1. The Undisputed Facts Show SourceOne's "Save More Than" or "Save Over" Statements Are True

As to the "save more than" or "save over" claims, there is no dispute that some Price Comparisons prepared by SourceOne—on which the savings claims were based—show projected savings above 35 percent. SSOF ¶ 14 (Ex. 146-6, Kenyon Supp. Report at 5 (identifying that more than 10 percent of the SourceOne Price Comparisons Defendants' expert analyzed reflected "35% or greater savings")); Exs. 7-16 (Price Comparisons)). There is therefore no dispute that savings of 35 percent or more were actually available at all relevant times to dentists purchasing dental supplies through SourceOne instead of from the Defendants and other distributors. Defendants do not dispute this, and their own expert says it is so.

There is also no dispute that some SourceOne customers have actually realized such savings, including actual "average" savings of 30-35 percent, as reflected in dentist testimonials provided to SDAs. SSOF ¶ 29 (Exs. 30-32). As a result, any advertisement stating "projected"

savings of "more than 30%" of "over 35%" is literally true.  Thus, the statements are not actionable on the basis of "literal falsity."

### 2.  SourceOne's "Average" Savings Claims Are Ambiguous, Which Means They Cannot Be Literally False

Regarding the claims of "average" savings of 30 or 35 percent or more, Defendants contend these claims are literally false because their expert's analysis of SourceOne Price Comparisons reflect an "average" savings of between 19.5% and 22.2%.  ECF No. 146, Defs' Pre-Mot. Ltr. at 2.[7]  However, the average savings statements at issue are ambiguous. SourceOne's advertisements do not say how the "average" savings amounts were calculated, or identify the products on which such savings can be achieved.  These advertisements about average savings say the savings are "projected," meaning that a dentist "can" or "could" achieve the stated savings.  SSOF ¶ 22 (Exs. 23-26).

This is important because SourceOne carries many products that Defendants do not, including products historically sold by manufacturers directly to dentists, and these manufacturer-direct products are often substantially less expensive than functionally interchangeable supplies sold by Defendants.  SSOF ¶ 9 (Ex. 1, at SourceOne-0012310; Ex. 4, at SourceOne-0062144; Ex. 5, at TDA_001340).  Based on survey research that reached statistically significant findings that Defendants do not contest, SourceOne reasonably believed that dentists experienced with purchasing supplies through SourceOne would over time begin substituting increasing amounts of these manufacturer-direct products for the products offered by Defendants, yielding progressively larger savings.  SSOF ¶ 7 (Ex. 1, at SourceOne-0012305;

---

[7] Defendants' expert's calculation of "average" savings are irrelevant to SourceOne's "save more than" or "save over" claims because those statements do not make any claim about "average" savings.

Ex. 3, Shams Dep. at 31:6-12, 32:1-20).[8]  There is no dispute that SourceOne had a reasonable factual basis for this belief, which in turn supports the "projected" savings in the challenged advertisements.  Had Defendants not crushed SourceOne's business in its incipiency, tens of thousands of additional dentists would have enjoyed these savings.  Because the average savings advertisements are at most ambiguous, they cannot be literally false.

While it is true that SourceOne's advertisements do not include words like "could," "some," or "possible" (although they do expressly state the savings are merely "projected"), the advertisements hardly express the certainty Defendants allege.  Defendants' literal falsity claim is premised on an interpretation of the advertisements to necessarily mean that "all" dentists "will" save an average of 35 percent or more, but none of those words appear in the advertisements, and there is a complete absence of evidence that any dentist ever interpreted the advertisements in the way that Defendants do.  Even if that were a reasonable interpretation of the statements, it is plainly not the *only* reasonable one.  *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 527 (S.D.N.Y. 2009) (finding advertisement ambiguous because while defendants' interpretation "is one message that could be taken" from the advertisement, it was "by no means the only reasonable interpretation" as "[r]easonable consumers could also read the words" in a way that the defendant "admits is literally true").  When, as here, the advertisements are "susceptible to more than one reasonable interpretation," they "cannot be literally false," warranting summary judgment for SourceOne.  *Time Warner*, 497 F.3d at 158.

---

[8] Respondents to the DPR Survey indicated that if given the opportunity to purchase manufacturer-direct products from one website in a single transaction, they would purchase more than 36 percent of their supplies from such a site.  SSOF ¶ 7 (Ex. 1, at SourceOne-0012304).

### 3.  SourceOne's "Leverage" Claims Are Literally True

Defendants contend that SourceOne's statements in certain advertisements that its price savings were achieved by "leveraging the group buying power" of SDA members is literally false.  ECF No. 131, Defs' Pre-Mot. Ltr. at 2; ECF No. 33, Patterson Counterclaims at pp. 16-17 (¶¶ 20-21); ECF No. 94, Benco Counterclaims at p. 22 (¶¶ 22-24).  The undisputed facts, however, show that SourceOne's "leverage" statements are literally true.

SourceOne's suppliers agreed to discount prices for TDA customers below SourceOne's public prices based on expected increased sales from TDA members resulting from TDA's endorsement.[9]  SourceOne was unable to predict *ex ante* precisely how much incremental volume would be drawn to its SDA-branded websites as compared to SourceOneDental.com, but SourceOne and SourceOne's vendors mutually recognized the importance of the SDA endorsements and the fact that there would be some incremental increase in transaction volume as a result of those endorsements.  There is no dispute that SourceOne's prices on its SDA-branded websites are lower than the prices it charges for the same products on its publicly available website, and no dispute that its "projected" "savings claims" to SDA members were based in part on this additional discount to the already-discounted prices made available through SourceOne's public website.  SSOF ¶ 27 (Ex. 3, Shams Dep. at 135:22-137:7, 324:5-326:25).  Thus, SourceOne "leveraged" TDA's endorsement and its members "buying power" (i.e., the prospect of additional sales from at least some of the thousands of TDA members), to entice its vendors to agree to the discounted prices underlying the stated savings claims.  SourceOne's "leverage" statements are therefore true: the prices on its SDA-branded websites are lower than

---

[9] SSOF ¶ 20 (Ex. 3, Shams Dep. at 58:12- 62:17, 324:5-326:25; Ex. 18, Osio Dep. at 624:25-628:12; Ex. 20, Dep. Ex. 129, SourceOne-0033898 - 99; Ex. 21, Dep. Ex. 194, SourceOne-0038011 - 12; Ex. 22, Kunin Dep. at 150:20-152:25, 156:4-157:14; ECF No. 94, Benco Counterclaims at p. 23 n.2; *see also* ECF No. 146, Defs' Pre-Mot. Ltr. at 2).

the prices on SourceOneDental.com because of the additional transaction volume reasonably anticipated and actually enjoyed as a result of SDA endorsements.  SSOF ¶ 31 (Ex. 33, Teece Report at p. 46 Figure 3).

Defendants' allegation that such discounting does not constitute "leveraging the buying power" of SDA members is a strawman.  Defendants allege the "leverage" statement is literally false because SourceOne did not have contractually-specified "volume based pricing agreements" with its suppliers.  ECF No. 33, Patterson Counterclaims at 17 (¶ 21); ECF No. 94, Benco Counterclaims at p. 22-23 (¶¶ 24-26).  SourceOne did have such agreements with its vendors.[10]  But even if it did not (contrary to fact), there is no evidence that Defendants' interpretation of "leveraging the group buying power" to mean SourceOne had "volume based pricing agreements" is the "*only* reasonable interpretation" of that statement.  *Stokely-Van Camp*, 646 F. Supp. 2d at 527.  Once again, there is no admissible evidence that anyone interpreted these advertisements in the way Defendants do.  "Reasonable consumers could" just as easily interpret SourceOne's "leverage" statement to mean that the TDA's endorsement of SourceOne's platform made available to TDA members prices lower than they could otherwise obtain, and therefore achieve the stated savings.  Under that more than reasonable and common sense interpretation, the statement is true—at all relevant times a dentist could achieve the stated savings, and can do so today, as evidenced by price comparisons and dentist testimonials reflecting such savings, that Defendants do not dispute.

### B.  Defendants Have No Evidence the Challenged Claims Are Material

Whether a Lanham Act plaintiff is challenging a literal falsity or allegedly misleading claim, the plaintiff must establish that the challenged claim is material, which requires "that the

---

[10] Ex. 43, at SourceOne-0013762; Ex. 3, SourceOne 30(b)(6) (Shams) Dep. at 126:8-127:3.

allegedly false or misleading representation involved an inherent or material quality of the product, *i.e.*, that the representation was 'likely to influence [consumers'] purchasing decisions.'" *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 67-68 (2d Cir. 2016) (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)).  This means the plaintiff must provide evidence that the false or misleading statement "would dissuade consumers from purchasing [plaintiff's] product." *Apotex*, 823 F.3d at 68.

Benco's Counterclaims alleged no facts supporting its conclusory assertions that SourceOne's allegedly false representations "were likely to materially affect the conduct of prospective purchasers, and did so affect that conduct." ECF No. 94, Benco Counterclaims at p. 30-31 (¶ 73).  For its part, Patterson did not even allege the element of materiality in its Counterclaims.  *See* ECF No. 33, Patterson Counterclaims at p. 20 (¶¶ 39-43).  In any event, neither Defendant can demonstrate that any of SourceOne's allegedly false claims influenced dentists' "purchasing decisions.'" *Apotex*, 823 F.3d at 67-68.  Defendants took no discovery on this element of their claims against SourceOne, and summary judgment is proper.

### 1. Defendants Cannot Show the Allegedly False Savings Claims Were Material to Dentists' Purchasing Decisions

Even assuming SourceOne's savings claims could be considered "literally false" because the "average" savings available to dentists purchasing through SourceOne was only 19.5 percent (or 22 percent), as Defendants' argue—instead of 30 percent or more—Defendants have no evidence that such a difference is material and would "likely influence [dentists'] purchasing decisions."  Defendants have no evidence that any dentist was "dissuade[d] from purchasing" from Patterson or Benco as a result of this alleged overstatement in claimed savings.  *Apotex*, 823 F.3d at 68.  Nor do Defendants have any evidence—through surveys or otherwise—that a

savings of only 20 percent would result in any individual or group of dentists dentist foregoing the use of SourceOne and continuing to purchase from Patterson or Benco.[11]

After more than fifty depositions, not a single witness testified that a difference between 20 percent and 35 percent in savings was or would be material to dentists' purchasing decisions. To the contrary, Defendants' employees testified that savings as low as five to ten percent would be sufficient to persuade a dentist to switch from one supplier to another.  SSOF ¶ 32 (Ex. 34, Guggenheim (Patterson Dental CEO) Dep. at 236:25-237:11; Ex. 35, Cobb (Patterson Sales Manager (Dallas/Ft. Worth)) Dep. at 72:7-22); Ex. 36, Counce (Patterson Branch Manager (Louisiana)) Dep. at 38:24-40:8; Ex. 37, Evans (Benco Director of Sales West) Dep. at 47:13-25).   In light of this evidence, there is no reasonable basis for a jury to conclude that SourceOne's alleged overstatement of its savings claims was material to any dentist's purchasing decisions.[12]

There is also no evidence to conclude that SourceOne's allegedly false statements about "leveraging the group buying power" of SDA members influenced the purchasing decision of any dentist.  Even accepting Defendants' interpretation of "leverage" to mean the existence of contractually-specified "volume based pricing," Defendants have adduced no evidence dentists were likely to be "dissuad[ed]" from doing business with Patterson or Benco, and either did or would have shifted their purchases to SourceOne based on that representation.

---

[11] Materiality is "typically" proven through consumer surveys.  *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110-11 (9th Cir. 2012).

[12] While Defendants may argue there is no dispute SourceOne believed its savings claims to be material to dentists' purchasing decisions, that does not answer the relevant question—whether SourceOne's alleged overstatement of its savings claims by approximately 15 percent was 'likely to influence [consumers'] purchasing decisions" by "dissuad[ing] consumers from purchasing [Patterson's or Benco's] product."  *Apotex,* 823 F.3d at 68.

### 2.   There Is No Evidence SourceOne's Allegedly False Statements About Its Employees Are Material

Neither Defendant alleged any misrepresentations about "SourceOne's employees' existence and qualifications" in their Counterclaims.  However, they now contend SourceOne made false statements about its "employees' existence and qualifications" based on SourceOne's identification of Jody Wallace as SourceOne's "CFO and HR Manager" and Dinesh Sakhrani as SourceOne's "VP Product Sourcing and Supplier Relations."  Ex. 17, Patterson's Response to SourceOne's Second Set of Interrogatories, at p. 18; ECF No. 151, Proposed JPTO at 7. SourceOne disputes the falsity of those statements.[13]  However, even if Defendants could prove them to be false, there is also no evidence that they were material to either dentists or SDAs considering SourceOne for endorsement.

 SourceOne's allegedly false statements about its "employees' existence and qualifications" were confined to its application to the TDA seeking its endorsement in May 2013, before the Defendants' boycott of SourceOne.  SSOF ¶ 17 (Ex. 5, at TDA_001341).  The TDA later shared that application with a handful of representatives from other SDAs who requested the document.  SSOF ¶ 18 (Ex. 18, Osio Dep. at 123:24-135:8).  But Defendants cannot dispute the presentation was not widely disseminated to dentists, let alone that dentists would have considered statements about Mr. Sakhrani's or Mr. Wallace's title or experience material to a decision to purchase dental products through SourceOne.  Nor have Defendants

---

[13] SourceOne's statements about Messrs. Wallace and Sakhrani were made in SourceOne's May 8, 2013 presentation to the TDA, when SourceOne's CEO Mr. Shams believed the statements accurately represented the role each was serving for the company, and the title Mr. Shams had discussed with them taking, had the business not been interfered with by Defendants' boycott conspiracy. Ex. 3, Shams Dep. at 96:16-104:17, 146:21-151:25.  While Defendants may dispute those facts, they have no basis to claim the inclusion of the statements concerning Messrs. Wallace and Sakhrani were at all material to any SDA's consideration of SourceOne after the TDA's Donovan Osio simply forwarded SourceOne's TDA presentation to representatives of other SDAs in late 2013.

adduced evidence to support any claim that the SDAs that received the document would or in fact did find SourceOne's isolated statement about Messrs. Sakhrani and Wallace in a nine-page, single-spaced document containing other extensive information about SourceOne and its proposal to TDA material to their consideration of SourceOne for endorsement.  Even if those statements were "literally false," that does not relieve Defendants of their burden to prove materiality, which they have not satisfied.

### C.  Defendants Cannot Show an Entitlement to Injunctive Relief

Defendants are not entitled to injunctive relief.  (Neither Defendant seeks more than nominal damages).   To obtain an injunction, even a "corrective advertising" injunction, Defendants must show a likelihood of "irreparable harm."  *Time Warner*, 497 F.3d at 161.  As the Second Circuit has explained, "'something more than a plaintiff's mere subjective belief that [it] is injured or likely to be damaged is required before [it] will be entitled even to injunctive relief."  *Id.*  (quoting *Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. 1980))."  "The rule in this Circuit, therefore, is that a plaintiff 'must submit proof which provides a reasonable basis' for believing that the false advertising will likely cause it injury."  *Id.* (quoting *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982)).

Here, Defendants have adduced no evidence of lost sales caused by the allegedly false advertisements.  Nor do Defendants have any proof beyond their "mere subjective belief" of any harm to their goodwill or reputation.  Defendants cannot describe with "any particularity lost sales, lost customers, or lost business opportunities" resulting from SourceOne's alleged misrepresentations, and Defendants have conducted no investigation or otherwise determined the advertising's impact on its "reputation or customers base."  *Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp.*, No. CIV. 09-642-SLR, 2011 WL 2312569, at *3 (D. Del. June 8, 2011).  In the absence of evidence of "any particular injuries as a result of Defendant's false

advertisements," *id.* at *4, Defendants' claims of harm to reputation or goodwill are speculative, which precludes a finding of irreparable injury. *Time Warner*, 497 F.3d at 161.

Defendants are also not entitled to a presumption of harm. "[T]he presumption [of irreparable injury] is properly limited to circumstances in which injury would indeed likely flow from the defendant's objectionable statements, i.e., when the defendant has explicitly compared its product to the plaintiff's or the plaintiff is an obvious competitor with respect to the misrepresented product," *Time Warner*, 497 F.3d at 162 (quotation omitted), or "where . . . a plaintiff has met its burden of proving deliberate deception in the context of a two-player market." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 260-61 (2d Cir. 2014).

In *Time Warner*, the Second Circuit found a presumption of harm was appropriate because, although neither of the advertisements at issue "identifies [plaintiff] by name . . . consumers in the markets covered by the preliminary injunction would undoubtedly understand [the defendants' advertisements] as referring to [plaintiff]." 497 F.3d at 162; *see also id.* ("According to a survey in the record, approximately 90% of households have either cable or satellite service. Given the *binary structure* of the television services market, it would be obvious to consumers that DIRECTV's claims of superiority are aimed at diminishing the value of cable, which as discussed above is synonymous with TWC in the areas covered by the preliminary injunction.") (emphasis added). Similarly, in *Merck*, the court found it "appropriate to utilize a presumption of injury" because "even if it is not a classic instance of comparative advertising where one company's advertisement mentions a competitor's product by name," the plaintiff and the defendant there the "only two direct competitors" in the relevant market. 760 F.3d at 260.

Here, none of SourceOne's advertisements to dentists reference either Defendant by

name, and Defendants have no evidence of "deliberate deception in the context of a two-player market." *Id.* at 260-61.   SourceOne's advertisements cannot be considered implicitly "comparative" to *only* Patterson or Benco, as there are other sellers of dental supplies—as Defendants have emphasized in response to SourceOne's antitrust claims.   ECF No. 130, Benco Pre-Mot. Ltr. at 3.   Thus, Patterson and Benco cannot show the alleged "likely injury" is any more likely to occur to them than to any other dental supplier, or to the settled-Defendant Henry Schein, Inc., which has the largest share of the dental supplies distribution market in the United States.  *See McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir.1988) (where misleading advertisement "ma[kes] no direct reference to any competitor's product," the injury "accrues equally to all competitors; none is more likely to suffer from the offending broadcasts than any other.").

Because Patterson and Benco have no "proof which provides a reasonable basis' for believing that the false advertising will likely cause it injury," they cannot show irreparable injury, and are not entitled to injunctive relief.

## II.   COMMON LAW UNFAIR COMPETITION

Patterson asserts a claim under Arizona common law for unfair competition based on false advertising.  ECF 33, Patterson Counterclaims at pp. 21 (¶¶ 44-48).  Benco asserts the same claim, and although it does not identify under what state law it brings this claim, its allegations mirror those of Patterson's Arizona law claims.  ECF 94, Benco Counterclaims at pp. 30-31 (¶¶ 71-75).   An unfair competition claim based on false advertising is congruent with false advertising under the Lanham Act.  *eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 1379063, at *7, *14 (D. Ariz. Apr. 20, 2012).   Thus, Defendants' unfair competition claims fail for the same reasons as Defendants' Lanham Act claims.

### III.     TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

Patterson asserts a claim under Texas common law for tortious interference with prospective business relationships, also based on SourceOne's allegedly false statements in its advertisements and to state dental associations.  ECF 33, Patterson Counterclaims at pp. 21-22 (¶¶ 49-54).  Benco asserts a claim for tortious interference with business relationships, but its claim, which parrots that of Patterson, recites the elements for tortious interference with *prospective* business relationships under Texas law.  ECF 94, Benco Counterclaims at pp. 31-32 (¶¶ 76-81).

The elements of a claim under Texas common law for tortious interference with prospective business relationships are:

1) There was a reasonable probability that the plaintiff would have entered into a business relationship with a third party;

2) The defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct;

3) The defendant's conduct was independently tortious or unlawful;

4) The interference proximately caused the plaintiff's injury; and

5) The plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Here, Defendants' claims for tortious interference fail because Defendants cannot establish any of the elements of their claim.

***First***, Defendants have not identified any business relationship with which SourceOne's allegedly false statements interfered, let alone that there was a "reasonable probability" that either Patterson or Benco would have entered into such an unidentified relationship.  "Though it

is not necessary to prove that the contract would have certainly been made but for the interference, that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475-76 (Tex. App. 2006). "[A] plaintiff must prove that more than mere negotiations occurred." *Id.* at 475. "Additionally, mere evidence of a drop in customers is not sufficient evidence to support this element." *SP Midtown, Ltd v. Urban Storage, L.P.*, No. 14-07-00717-CV, 2008 WL 1991747, at *9 (Tex. App. May 8, 2008); *accord Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 132 (Tex. App. 1999) (evidence of loss of clients in general "does not reach the level of reasonable probability required to show that a contract would have been made but for the interference").

Patterson and Benco's failure to identify a single business relationship into which they would have entered absent SourceOne's allegedly false statements is alone fatal to their claim. *See SP Midtown*, 2008 WL 1991747, at *9; *Armijo v. Mazda Int'l*, No. 14-03-00365-CV, 2004 WL 1175335, at *2 (Tex. App. May 24, 2004) (summary judgment appropriate when plaintiff "failed to identify, or present any evidence of, any such prospective relationship"). Moreover, while Patterson has stated that, as a general matter, it has lost sales to SourceOne (SSOF ¶ 34 (Ex. 40, Patterson's Responses and Objections to SourceOne's First Set of Requests for Admission at 24)), these lost sales "are not sufficient evidence to support this element." *SP Midtown*, 2008 WL 1991747, at *9; *accord Stephan v. Baylor Med. Ctr. at Garland*, 20 S.W.3d 880, 891 (Tex. App. 2000) (statements about "the general effect of" purported tortious conduct insufficient absent "evidence of any contracts or prospective contracts that were interfered with or damaged in any way as a result of" that conduct). Benco, for its part, cannot establish *any* lost sales to SourceOne, further dooming its claim. SSOF ¶ 33 (Ex. 38, Benco's Amended Resp.

& Objs. to SourceOne's First Set of Requests for Admission at 35-38 (stating in response to requests regarding lost sales and lost customers (Request Nos. 101-112) that, as to each, Benco "lacks knowledge or information sufficient to either admit or deny", "and therefore denies it")).

*Second*, there is no evidence that SourceOne intended to interfere with Defendants' relationships.  "[I]nterference is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result.'"  *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001) (quoting the Restatement (Second) of Torts § 766B cmt. d (1979)); *see also Coinmach Corp.*, 417 S.W.3d at 923.  However, if the actor "had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper."  *Id.*  Moreover, absent actual knowledge of the prospective contract or business relation, interference cannot be intentional. *Texas Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 834 (Tex. App. 1994) ("Absent any knowledge that Texas Oil was the $16.2 million dollar bidder and that there was a reasonable probability of a contract between Tenneco and Texas Oil, there are no fact issues whether Seagull desired to interfere with the probable contractual relationship or that Seagull believed interference was substantially certain from its actions"), *rev'd on other grounds sub nom. Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178 (Tex. 1997).  None of SourceOne's advertisements targeted Defendants specifically or their prospective relationships with certain unidentified parties: the advertisements do not reference either Defendant by name; nor can they be interpreted as "comparative" to only Patterson or Benco. Further, Defendants have no evidence that SourceOne knew of Defendants' prospective relationships (which Defendant have failed to identify), much less that SourceOne knew that the

loss of those prospective relationships "was certain or substantially certain to occur as a result" of its purported false statements. *Bradford*, 48 S.W.3d at 757; *Texas Oil Co.*, 917 S.W.2d at 834.

**Third**, Defendants cannot show that SourceOne committed an independently tortious or unlawful act.  Because Defendants' tortious interference claims are based on the same conduct underlying their false advertising claims, on which SourceOne is entitled to summary judgment for the reasons explained in Section I, Patterson and Benco cannot show SourceOne "committed an independently tortious or unlawful act."

**Fourth**, even if Patterson and Benco could make such a showing, they cannot demonstrate that the purportedly tortious or unlawful conduct caused them injury.  This element requires "at minimum, that the tortious conduct constitute a cause in fact that prevented the prospective business relationship from coming to fruition in the form of a contractual agreement." *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App. 2004).  "The test for cause in fact, or 'but for causation,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)); *see also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 676 (S.D. Tex. 2010) (summary judgment appropriate when plaintiff did "not identify any evidence of a client with which it would have done business but for the defendants' conduct").   Defendants cannot point to any evidence that certain unidentified relationships were prevented by SourceOne's purported false statements as opposed to some other reason, such as actual savings achieved by purchasing through SourceOne or other legitimate competition. *See supra* Section I.B.

**Fifth**, Defendants cannot demonstrate any actual harm or damages resulting from SourceOne's allegedly false statements—nor have they even tried to do so.  Benco denies that it

has lost any sales or customers to SourceOne (SSOF ¶ 33 (Ex. 38, Benco's Am. Resp. & Objs. to SourceOne's First Set of Requests for Admission at 35-38, and seeks only "nominal damages" from SourceOne); Ex. 39, Benco's Supp. Initial Disclosures at 9)).   Patterson seeks $1 in damages.   SSOF ¶ 34 (Ex. 41, Patterson's Supp. Initial Disclosures at 6).   The lack of any actual harm is evidenced by Defendants' own claim for injunctive relief—instead of claiming any actual injury, Patterson and Benco merely claim to have suffered some unidentified "likely injur[y]."   ECF No. 131, Defs' Pre-Mot. Ltr. at 3.

## CONCLUSION

For these reasons stated above, SourceOne respectfully requests that the Court grant its motion for summary judgment.

Date:   October 9, 2017                    */s/ Michael S. Mitchell*

Jack G. Stern (Bar Number JS-1394)
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
7th Floor
New York, NY  10022
(212) 446-2300

James P. Denvir (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Michael S. Mitchell (*pro hac vice*)
Abby L. Dennis (*pro hac vice*)
Christopher G. Renner (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727

**Counsel for Plaintiff SourceOne Dental, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2017, the foregoing document was filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to counsel of record in this matter, and was also sent via e-mail to the following:

Howard D. Scher
Kenneth L. Racowski
Samantha L. Southall
Thomas P. Manning
Jackson E. Warren
BUCHANAN INGERSOLL & ROONEY PC
50 S 16th Street, Suite 3200
Philadelphia, PA 19102
howard.scher@bipc.com
kenneth.racowski@bipc.com
samantha.southall@bipc.com
thomas.manning@bipc.com
jackson.warren@bipc.com

Carrie G. Amezcua
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW
Suite 300
Washington, DC 20006
carrie.amezcua@bipc.com

*Counsel for Benco Dental Supply Co.*

James J. Long
Scott M. Flaherty
Jay William Schlosser
Ruvin Jayasuriya
BRIGGS AND MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
jlong@briggs.com
jschlosser@briggs.com
sflaherty@briggs.com
rjayasuriya@briggs.com

Michael B. Miller
MORRISON & FOERSTER LLP
250 West 55 Street
New York, NY 10019
mbmiller@mofo.com

*Counsel for Patterson Companies, Inc.*

*/s/ Michael S. Mitchell*
Michael S. Mitchell (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727
mmitchell@bsfllp.com

**Counsel for Plaintiff SourceOne Dental, Inc.**