UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SOURCEONE DENTAL, INC.,                                     :
                                                            :
                              Plaintiff,                    :   **MEMORANDUM**
                                                            :   **DECISION & ORDER**
                - against -                                 :
                                                            :   15-cv-5440 (BMC)
                                                            :
PATTERSON COMPANIES, INC. and BENCO                         :
DENTAL SUPPLY COMPANY,                                      :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X

**COGAN**, District Judge.

Defendants Patterson Companies, Inc. and Benco Dental Supply Company move for reconsideration of this Court's order granting summary judgment in favor of plaintiff SourceOne Dental, Inc., on their Lanham Act and related state-law counterclaims. Defendants move in the alternative for entry of judgment under Federal Rule of Civil Procedure 54(b). Defendants ask the Court to reconsider its determination that plaintiff's misrepresentations, although literally false, were immaterial. Defendants argue that the misrepresentations are actually material, or, at a minimum, that there remains a genuine dispute of material fact about their materiality. Defendants have not identified controlling decisions or facts that the Court overlooked or that would change the Court's conclusion, so reconsideration is not warranted. Neither is entry of judgment under Rule 54(b), because defendants have not provided an equitable reason to support it. Defendants' motion is therefore denied.

**I. Reconsideration**

The standard for granting a motion for reconsideration is strict. Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012). "A motion for reconsideration should be

granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Defendants argue first that the Court "improperly require[d] a[] showing of actual consumer impact" rather than "asking whether the literally false statements by SourceOne apply to an inherent quality or characteristic of the product." Despite defendants' creative framing, the Court's prior order did no such thing.

The literally false statements plaintiff made were overstatements of price savings. There is no dispute that plaintiff charged, on average, lower prices than defendants. But the prices were not as much lower as plaintiff claimed – as discussed in the order granting summary judgment, plaintiff claimed that its products were an average of 30-35% cheaper, when in fact the difference was more like 19%. The Court granted summary judgment in large part because defendants did not produce any evidence that SourceOne's literally false statements overstating price savings were "*likely to* influence purchasing decisions." Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016) (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997)) (emphasis added). That was the standard applied by the Second Circuit in Apotex; the Second Circuit subsequently reaffirmed that "the [materiality]

2

standard is whether the deception is 'likely to influence purchasing decisions.'" Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d 48, 73 (2d Cir. 2016).

Earlier in the Church & Dwight opinion, the Second Circuit acknowledged that its prior cases had been a little unclear about the relevant standard:

> In NBA, we defined "material" as "an inherent quality or characteristic of the product." 105 F.3d at 855 (internal quotation marks omitted). In so doing, we cited three other circuits and a treatise, and included parentheticals for each citation that defined "material" as "likely to influence purchasing decisions." Id. However, our post-NBA cases do not mention this "likely to influence purchasing decision" feature of the standard; they focus instead on the "inherent quality or characteristic" descriptor.

Id. at 71 n.10 (citing Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014); Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 n.3 (2d Cir. 2007); S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001)). This Court did not overlook the "inherent quality or characteristic" standard that defendants cite in their motion; the Court acknowledged it and applied it the same way that the Second Circuit did in Apotex. In that case, the Second Circuit did not "examine[] the subject of the misrepresentation[] and ask[] whether consumers care about it," as defendants ask the Court to do. Instead, the Second Circuit looked to whether "the specific misrepresentation in the graphic – in any of [the defendant's] advertisements – was likely to influence consumers' purchasing decisions." Apotex, 823 F.3d at 68.

The representation in Apotex was a graphic about drug concentration in the body and drowsiness side effects, which appeared on the packaging for an anti-spasm medication. For this particular drug, an increase in the drug's concentration in a patient's body would lead to the patient becoming drowsier. Lowering the drug concentration reduced this side effect. A graph on the drug's packaging showed average drug concentration in the body over time, but the figures stated in text superimposed on the graph – "30% increase for tablets" and "20% decrease

3

for capsules" – referred to Cmax value (the point of greatest drug concentration in the body), which is neither an average nor correlated with time. The district court concluded – and the Second Circuit agreed – that the graphic combined with the superimposed text improperly conflated Cmax with average drug concentration and was therefore literally false.

Nevertheless, the district court granted summary judgment for defendant – and the Second Circuit affirmed – because plaintiff produced only "generalized evidence that [the defendant's] increased sales of [the drug in capsule form] stemmed from its advertising efforts." Plaintiff's claim failed on the materiality prong because plaintiff did not produce any evidence that the specific misrepresentation in the graphic (improper conflation of average drug concentration over time and Cmax values) was likely to influence consumers' purchasing decisions.

Although "reduced side effects" and "price" surely could be relevant characteristics for a Lanham Act claim, the key question is whether the claimant has produced evidence that the *specific misrepresentation* about side effects or price – here, the overstatement of savings – was likely to influence consumer behavior. As in Apotex, defendants did not provide that evidence.[1] See also Restatement (Third), Unfair Competition § 3, cmt. b (Am. Law Inst. 1995) ("It is not necessary that the [deceptive] representation be the sole or predominant factor influencing the conduct of prospective purchasers. Nor is it necessary to demonstrate that purchasers would have acted differently in the absence of the representation. *It is sufficient if the representation is likely to influence prospective purchasers to some substantial degree*." (emphasis added)).

---

[1] For the same reason, the Court declines to reconsider its summary judgment order based on the alleged presence of genuine disputes of material fact. Defendants cite to only two facts (really one) to support its argument – "savings matter to dentists and State Dental Associations" and "5% to 10% savings affect decisions." The Court already considered and rejected these in its prior order. As the Court previously explained, "[i]f defendants agree that a consumer would be induced to switch to a supplier which offered goods for 10% less, then SourceOne's customers' average savings of 9% more than that (in lieu of the promised 20%+ more) is just gravy."

4

Contrary to defendants' arguments, the Court did not require them to produce evidence that the differential between advertised and actual prices *actually* affected consumers' behavior; it concluded that they had not met their burden because they did not produce any evidence to show that the misrepresentation was *likely* to affect consumers' behavior.

Defendants rely heavily on S.C. Johnson. In S.C. Johnson, the district court permanently enjoined defendant from using two television commercials and a print advertisement that portrayed water leaking out of plaintiff's Slide-Loc brand plastic bag, sealed and held upside down, while a goldfish inside called out in distress. Defendant's brand plastic bag, clearly labeled and shown not dripping, appeared next to plaintiff's in the ads.

At trial, the evidence showed that although plaintiff's bags leaked in two-thirds of cases, only 10% leaked at the rate shown in the first commercial. Based on this evidence, the district court concluded that the advertisements were literally false. The district court also concluded that the advertisements portrayed the Slide-Loc bag's inability to prevent leaks as an inherent quality or characteristic of the product. S.C. Johnson, No. 99 CIV. 11079, 2000 WL 122209, at *2 (S.D.N.Y. Feb. 1, 2000); id., 2000 WL 423534, at *3 (Apr. 19, 2000). The district court emphasized that the advertisements were literally false because they suggested that "the type of fairly rapid and substantial leakage shown in the commercial is simply characteristic of that kind of bag." S.C. Johnson, 2000 WL 122209, at *2.

On appeal, the defendant did not challenge the district court's materiality finding, so the Second Circuit simply affirmed the "district court's finding that the depiction of the risk of leakage from Slide-Loc bags . . . is literally false as to an inherent quality or characteristic of Slide-Loc storage bags." S.C. Johnson, 241 F.3d at 239. In the context of the literal falsity

5

argument that was appealed, the Second Circuit referred to the misrepresentation as "that Slide-Loc bags always leak when filled with water and held upside down." Id. at 240.

Defendants argue that S.C. Johnson is just like this case because, although the parties agreed that some or even most bags leaked, the defendant's commercials falsely represented that they leaked more than they actually did. Even setting aside the development in the Second Circuit's materiality standard exemplified in Apotex and acknowledged in Church & Dwight, the Court remains unconvinced. First, as noted above, the S.C. Johnson defendant did not appeal the issue of materiality grounds, so the Second Circuit did not address it. Second, the procedural posture was very different from this case. In S.C. Johnson, the district court converted plaintiff's motion for a preliminary injunction into a bench trial and then entered a permanent injunction after plaintiff prevailed. There was no distinction between materiality as a matter of law or as a matter of fact because district court evaluated materiality only once, at the bench trial.

Finally, to the extent that the district court did address materiality, the relevant misrepresentation it analyzed was that all Slide-Loc bags leak. This misrepresentation is a binary – either Slide-Loc bags always leak or they don't. Other cases defendants cite also involve binary misrepresentations (for example, in Coca-Cola Co. v. Tropicana Prod., Inc., 690 F.2d 312, 318 (2d Cir. 1982), that the product contains "only fresh-squeezed, unprocessed juice", and in Church & Dwight, that a certain pregnancy test uses the same metric for advancement of a pregnancy that doctors use). In those cases, asking whether consumers are likely to care about the subject (*e.g.*, that a Slide-Loc bag always leaks) is the same as asking whether consumers care about the specific representation, which Apotex makes clear is required. Neither S.C. Johnson nor Coca-Cola nor Church & Dwight applied a different standard than the Court applied in this case, and their reasoning does not dictate a different conclusion.

6

Other than relying on the arguments of counsel, which are not evidence, defendants have not explained how a jury in the instant case could be expected to determine whether a purchaser of dental supplies would likely be influenced by the overstatements of price savings at issue here. The Court ventures to guess that none of the jurors in this case will be dentists, so they would have nothing to inform their decision except an uneducated instinct. There are several types of evidence that a jury might use to make an informed decision – most commonly, parties use survey evidence to prove such potential influence – but defendants have offered no evidence at all. The Court will not allow a jury to speculate on what might or might not influence a purchaser of dental supplies, at least when the range of the savings differential is not exorbitant.

Defendants have not pointed to any controlling decisions or data that the Court overlooked, nor any other reason for the Court to reconsider its conclusion. Defendants' motion for reconsideration is therefore denied.

## II. Entry of Judgment Under Rule 54(b)

Defendants ask the Court to direct entry of a final judgment on their counterclaims under Federal Rule of Civil Procedure 54(b) so that they can appeal them immediately. Under Rule 54(b), a district court may enter final judgment where: (1) there are multiple claims or parties; (2) at least one claim, or the rights and liabilities of at least one party, have been finally decided within the meaning of 28 U.S.C. § 1291; and (3) the district court makes "an express determination that there is no just reason for delay" and directs the clerk to enter judgment. The third factor "is left to the sound judicial discretion of the district court" and "is to be exercised in the interest of sound judicial administration." Ginett v. Comput. Task Grp., Inc., 962 F.2d 1085, 1092 (2d Cir. 1992) (quoting Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8 (1980)).

The Second Circuit has cautioned that relief under Rule 54(b) should be granted "sparingly." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629 (2d Cir. 1991). "[I]n light of the policy against piecemeal appeals, it is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment." Novick v. AXA Network, LLC, 642 F.3d 304, 314 (2d Cir. 2011). But in assessing whether an appeal would avoid judicial inefficiency, the court does not consider "economy or efficiency in just the appellate court; if that were the standard, we should return to the common law's 'one suit, one appeal' standard." Ginett, 962 F.2d at 1095.

The first two elements are clearly satisfied here: there are multiple parties and claims and defendants' counterclaims have been finally decided within the meaning of 28 U.S.C. § 1291. Defendants make two primary points for why there is no just reason for delay; neither are persuasive. First, defendants point out that the counterclaims are not inextricably intertwined with plaintiff's Sherman Act claim and related state-law claims, nor would an appellate decision on defendants' counterclaims render moot or advisory a future decision on those claims. Defendants are correct, but those are not affirmative reasons to enter judgment under Rule 54(b) – both are potential disqualifiers, but neither explain why an immediate appeal would promote efficiency or equity. Neither does defendants' second point – that entry of judgment would "avoid[] the need for a second trial just on the counterclaims" and would permit the Second Circuit to evaluate this Court's reasoning. Defendants propose that an immediate appeal could "result in reversal and trial of all of the issues between the parties in one proceeding." The former is possible, if ambitious, in light of the Second Circuit's average disposition time of 10.8

months, as plaintiff identified in its opposition.  The latter is no reason at all:  evaluating a district court's reasoning is the purpose of any appeal; it is not a reason to expedite this one.

In the end, defendants can only point to the possibility of one trial instead of two to support their request for the Court to enter judgment now.  This is not a trivial efficiency argument:  it would be much more efficient for both the Court and the parties to have a single trial.  But defendants have not shown any affirmative equitable reason for the Court to enter judgment, as Novick explains is required.  Furthermore, the near-certainty of two appeals (in light of both sides having brought motions for summary judgment) outweighs the more remote possibility of a single trial.  Defendants' motion to direct entry of judgment under Rule 54(b) is therefore denied.

## CONCLUSION

Defendants' motion for reconsideration and to direct entry of judgment under Rule 54(b) [228] is DENIED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       August 13, 2018